UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MINERVA ABUBAKAR, et al

        Plaintiffs,

   v.                                   NO. CIV. S-06-2268 LKK/EFB

COUNTY OF SOLANO,

                                                 O R D E R

        Defendant.

                                           /

This is a Fair Labor Standards Act (FLSA) action for uncompensated overtime wages and other relief brought by various correctional officers against their employer, Solano County. Plaintiffs have filed a motion to disqualify defendant's attorneys, one of whom allegedly established an attorney-client relationship with nine of the plaintiffs in this action while representing the county in a separate suit. The court resolves the matter upon the parties' papers and after oral argument. For the reasons explained below, the court denies the motion.

////

1

**I. Background**

This is an FLSA action filed in October 2006 by Solano County correctional officers. The complaint alleges that the county failed to pay overtime for certain pre- and post-shift activities. First Am. Compl. (FAC) ¶ 1. At present, there are approximately 160 plaintiffs in the action. Mr. Terence Cassidy and Mr. John Whitefleet of the law firm of Porter Scott represent the county.

**A. Events Giving Rise to Asserted Conflict of Interest**

In April 2007, the county retained one of these same attorneys, Mr. Cassidy, to represent it in another action filed in this district, Todd v. County of Solano, No. 07-CV-726 FCD/EFB. Decl. of Terence Cassidy ("Cassidy Decl.") ¶ 5. Todd is a currently pending class action arising from the strip search policies and practices of the Solano County Adult Jail.

In connection with that case, on October 10, 2007, Mr. Cassidy requested that the Sheriff's Department coordinate meetings with the officer-witnesses identified in the Todd defendants' mandatory initial disclosures. Id. ¶ 6. The following day, on October 11, 2007, Mr. Cassidy met with a total of approximately fifteen officers. Id. ¶ 8. He met with them in groups of four or five for approximately forty-five minutes to an hour and fifteen minutes each. Id.

During each meeting, Mr. Cassidy explained that he was representing the county in a lawsuit regarding its strip search policies and practices. Id. ¶ 8. He also volunteered to represent the officers for the specific and limited purpose of defending them

2

1 as witnesses in the Todd case and for purposes of depositions. Id.
2 During the meetings, Mr. Cassidy and the officers discussed the
3 operating procedures regarding strip searches of inmates at the
4 main jail. Id. Not discussed, according to Mr. Cassidy, was this
5 case, nor the officers' wages, overtime, or compensation. Id. ¶
6 9. In addition, Mr. Cassidy maintains that he did not obtain any
7 information from the officers regarding strip searches that could
8 not have been obtained through deposition. Id. ¶ 8.

9 Of the approximately fifteen officers who met with Mr.
10 Cassidy, nine were plaintiffs in this suit. They include officers
11 David Amiccuci, Reyes Carbajal, James Castro, David Chapman, David
12 Holsten, Randy Pratt, Scott Rosenkild, Mark San Augustin, and
13 Thomas Schlemmer. Decl. of James Carr ("Carr Decl."), Ex. C.

**B. Events After Officer Meeting**

15 Later in the day after the meetings had concluded, Mr. Cassidy
16 realized for the first time that some of the officers with whom he
17 had met might also be plaintiffs in this action. Cassidy Decl. ¶
18 10. Upon confirming that his suspicions were accurate, Mr. Cassidy
19 immediately informed plaintiffs' counsel. Id. Both parties then
20 conducted research on the ethical obligations under the
21 circumstances. Id.

22 Approximately a week later, on October 18, 2007, Mr. Cassidy
23 wrote to each of the nine officers to inform them that he had "a
24 conflict of interest in representing [them] as [] witness[es] in
25 the Todd case." Carr Decl., Ex. C. This correspondence was copied
26 to counsel. Cassidy Decl. ¶ 11.

On November 6, 2007, plaintiffs sent Mr. Cassidy a written letter requesting that he (and all other Porter Scott attorneys, including Mr. Whitefleet) voluntarily recuse themselves from continued representation of the county in this action. Id., Ex. A. Then, on November 12, 2007, plaintiffs contacted Mr. Whitefleet about potentially adding a new plaintiff. Decl. of John Whitefleet ¶ 7. At that point, Mr. Whitefleet informed plaintiffs that given the recusal request, and in an abundance of caution, Porter Scott would not be conducting any further activity on the case. Id.

On November 15, 2007, Mr. Cassidy explained in writing the reasons why he felt that recusal was not required under the circumstances. Cassidy Decl., Ex. B. Plaintiffs did not respond to this correspondence; instead, on December 10, 2007, they inquired about the inspection of documents that had previously been scheduled for that date (before Mr. Cassidy's meeting with the nine officer plaintiffs). Id. ¶ 9. Defendant stated that it would not produce documents because the conflict of interest issue appeared to remain pending. Carr Decl., Ex. D. Plaintiffs responded that defense counsel was improperly conditioning the production of documents, as well as its stipulation to add new plaintiffs, upon a waiver of the conflict of interest issue. Carr Decl. ¶ 15.

Following this exchange, plaintiffs filed a motion to compel on December 18, 2007. The magistrate judge assigned to this case ruled that if the present motion to disqualify were denied, the county would have 30 days to produce the documents, and that if the present motion were granted, the county would have 30 days to

4

1  produce the documents from the date it obtained new counsel.

## II. Discussion

Motions to disqualify are decided under state law. See In re County of Los Angeles, 223 F.3d 990, 995 (9th Cir. 2000); L.R. 83-180(e) ("[T]he Rules of Professional Conduct of the State Bar of California . . . are hereby adopted as standards of professional conduct in this court."). Whether an attorney should be disqualified is within the discretion of the trial court. Henriksen v. Great Am. Savings & Loan, 11 Cal. App. 4th 109, 113 (1992). Disqualification, however, is a drastic remedy that courts should hesitate to impose unless necessary. Visa, U.S.A., Inc. v. First Data Corp., 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003); see also In re Marriage of Zimmerman, 16 Cal. App. 4th 556, 562-63 (1993) (noting that disqualification may impose financial burden on client and interfere with client's choice of counsel). An appearance of impropriety by itself is generally not sufficient to warrant disqualification. Gregori v. Bank of Am., 207 Cal. App. 3d 291, 300 (1989) ("'[A]ppearance of impropriety is simply too slender a reed upon which to rest a disqualification order except in the rarest of cases.'").

Here, plaintiffs argue that defense counsel violated two California Rules of Professional Conduct. First, plaintiffs maintain that defense counsel violated the rule against concurrent representation of adverse interests. See Cal. R. Prof. Conduct 3-310(C) (stating that an attorney "shall not, without the informed written consent of each client . . .   [r]epresent a client in a

matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter"). Second, plaintiffs contend that defense counsel violated the rule prohibiting ex parte contact with represented parties without consent. See Cal. R. Prof. Conduct 2-100(A) (stating that an attorney "shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter" without obtaining that lawyer's consent).

**A. Waiver**

As an initial matter, defendant argues that plaintiffs have waived any right to move to disqualify. In general, waiver occurs where one evinces the intention to relinquish a right, or engages in conduct so inconsistent with that right as to induce a reasonable belief that it has been relinquished. Mardirosian v. Lincoln Nat'l Life Ins. Co., 739 F.2d 474, 477 (9th Cir. 1984). "Implied waiver, especially where it is based on conduct manifestly inconsistent with the intention to enforce a known right, may be determined as a matter of law where the underlying facts are undisputed." Oakland Raiders v. Oakland-Alamedia County Coliseum, Inc., 144 Cal. App. 4th 1175, 1191 (2006).

Here, defendant argues that plaintiffs have impliedly waived the right to seek disqualification based upon their conduct. Specifically, defendant points to the fact that after plaintiffs' initial recusal request and defendant's response (on November 6 and 15, 2007, respectively), plaintiffs did not pursue the conflict

6

issue any further but instead pressed forward with its request for production of documents (on December 10, 2007). In defendant's view, it is inconsistent to argue that there has been an ethical violation warranting disqualification but then demand that defense counsel continue litigating the case.

Plaintiffs, on the other hand, maintain that unless the very utterance of an ethical objection operates as an automatic stay of all proceedings, Mr. Cassidy and Mr. Whitefleet still had a continuing duty to represent the county, which included responding to discovery requests. In addition, plaintiffs contend that their conduct has been no more inconsistent than defendant's position that there has been no ethical violation but that it has no obligation to honor its discovery obligations pending a resolution of the ethical objections.

Both parties' responses to their predicaments are somewhat understandable. Mr. Cassidy and Mr. Whitefleet, on the one hand, were placed in a position where they would either be forced to continue litigating a case where they potentially had a conflict of interest, or to cease all activity at the risk of violating its discovery obligations. Plaintiffs, on the other hand, needed to continue discovery but felt it was unfair for defense counsel to condition that discovery upon a waiver of ethical objections.

Throughout this entire dispute, plaintiffs consistently maintained the position that they were not waiving the conflict of interest issue -- and defendant was aware of this fact. Given this context, plaintiffs' conduct in pressing forward with discovery

1  would not induce a reasonable belief that plaintiffs were
2  relinquishing their rights.  More fundamentally, the conduct at
3  issue -- a request for production of documents -- is not
4  sufficiently clear to constitute implied waiver.  See Dole
5  Bakersfield, Inc. v. Workers' Comp. Appeal Bd., 64 Cal. App. 4th
6  1273, 1277 (1998) (requiring a "clear showing of an intent to
7  relinquish [the] right").  This is not a case, for example, where
8  a party knowingly refrained from raising a grounds for
9  disqualification, cf. Trust Corp. of Montana v. Piper Aircraft
10 Corp., 701 F.2d 85, 87 (9th Cir. 1983), or where a party
11 unreasonably delayed in raising the objection, cf. River W. v.
12 Nickel, 188 Cal. App. 3d 1297, 1309 (1987).  Rather, plaintiffs
13 timely expressed their opinion that defense counsel should be
14 disqualified from this action.  Accordingly, the court finds that
15 plaintiffs have not waived the right to bring the present motion.

16 **B. Conflict of Interest**

17     **1. Concurrent versus Successive Adverse Representations**

18      Turning to the merits, plaintiffs first argue that Mr. Cassidy
19 created a conflict of interest by representing clients with adverse
20 interests: the county, in this action, and the officers, in Todd.
21 Conflicts of interest may arise in one of two ways.  First, an
22 attorney may successively represent clients with adverse interests.
23 Flatt v. Superior Court, 9 Cal. 4th 275, 283 (1994).  Under those
24 circumstances, the chief fiduciary value at jeopardy is that of
25 confidentiality.  Accordingly, the legally relevant question is
26 whether there is a substantial relationship between the former and

subsequent representations; if so, access to confidential information by the attorney in the course of the first representation is presumed and disqualification in the second representation is required. Id. at 283.

Second, an attorney's duty of loyalty may be violated when he or she simultaneously represents clients with adverse interests, which is what plaintiffs contend happened here. Under this second set of circumstances, the chief fiduciary value at stake is not one of confidentiality but that of loyalty. Id. at 284 ("The primary value at stake in cases of simultaneous or dual representation is the attorney's duty -- and the client's legitimate expectation -- of loyalty, rather than confidentiality."). Accordingly, there is no requirement that the two representations be substantially related. Instead, unless an exception applies,[1] "the rule of

---

[1] These exceptions include instances where an attorney "immediately withdraws from an unseen concurrent adverse representation which occurs by 'mere happenstance,'" Florida Ins. Guar. Ass'n, Inc. v. Carey Canada, 749 F. Supp. 255, 261 (S.D. Fla. 1990), and where the attorney played no role in creating the conflict of interest, such as when a corporate client is acquired by another company, Gould, Inc. v. Mitsui Min. & Smelting Co., 738 F. Supp. 1121 (N.D. Ohio 1990). See generally State Farm Mut. Auto. Ins. v. Federal Ins. Co., 72 Cal. App. 4th 1422, 1432 (1999) (discussing exceptions). Also, as contemplated by the text of Rule 3-310(C), no disqualification is required where there is informed written consent by both clients. Cal. R. Prof. Conduct 3-310(C); see also Flatt, 9 Cal. 4th at 286, n.4.

Although I need not reach the issue of whether an exception applies given that I ultimately conclude that no attorney-client relationship was formed for conflict of interest purposes, the only one that might apply here is Carey Canada's "mere happenstance" exception. But it is unlikely defendant could satisfy its requirements. It was not unforeseeable that the prospective witnesses in Todd were plaintiffs in this action. Mr. Cassidy's ability to immediately confirm the witnesses' status in this action after his meeting with them proves that. Although it is

disqualification in simultaneous representation cases is a *per se* or 'automatic' one." Id. at 285. Merely converting a present client into a former client is, under the aptly-named "hot potato rule," insufficient to cure the conflict. Id. at 288.

### 2. Existence of Attorney-Client Relationship

In analyzing the conflict of interest issue, the initial question that must be answered is whether Mr. Cassidy formed an attorney-client relationship with the nine plaintiff officers during the meeting.[2] See Civil Service Comm'n v. Superior Court, 163 Cal. App. 3d 70, 76-77 (1984) ("Before an attorney may be disqualified . . . because his representation . . . is adverse to the interest of a current or former client, it must first be established that the party seeking the attorney's disqualification

---

understandable that the numerosity of plaintiffs in this action makes it difficult to remember all their names, that is a foreseeable risk that should have counseled more caution, not less.

[2] Not all courts have framed this requirement in terms of whether an attorney-client relationship has been formed. For example, other courts have required "standing" to bring disqualification motions, which is conferred by "a breach of the duty of confidentiality owed to the complaining party, regardless of whether a lawyer-client relationship existed." DCH Health Servs. v. Waite, 95 Cal. App. 4th 829, 832 (2002) (noting that a lawyer may be disqualified after improper contacts with an opposing party's expert witness); see also Am. Airlines v. Sheppard, Mullin, Richter, & Hampton, 96 Cal. App. 4th 1017, 1033-34 (2002) (holding that conflict may arise from an attorney's relationship with a non-client where confidential information has been disclosed or there is an expectation that the attorney owes a duty of fidelity); Coyler v. Smith, 50 F. Supp. 2d 966, 971 (C.D. Cal. 1999) (holding that non-clients have standing to raise serious ethical breaches). The difference in approach, however, is oftentimes "largely semantic." Dino v. Pelayo, 145 Cal. App. 4th 347, 353 (2006) (finding that so long as "some sort of confidential or fiduciary relationship" existed, disqualification motion is proper).

10

was or is 'represented' by the attorney in a manner giving rise to an attorney-client relationship.").

Under the California Supreme Court's decision in SpeeDee Oil, the formation of an attorney-client relationship for conflict of interest purposes turns on "whether and to what extent the attorney acquired confidential information." People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., 20 Cal. 4th 1135, 1148 (1999). "An attorney represents a client -- for purposes of a conflict of interest analysis -- when the attorney knowingly obtains material confidential information from the client and renders legal advice or services as a result." Id. When one seeking legal advice consults with an attorney and secures that advice, an attorney-client relationship is presumed. Id. An attorney-client relationship may be formed even when the conversation between the lawyer and client is brief, or where there has been no fee agreement or retainer. Id.

As noted above, the primary fiduciary value at stake in concurrent representation cases is that of loyalty rather than confidentiality, but the court must nevertheless consider whether Mr. Cassidy obtained confidential information for the limited purpose of ascertaining whether an attorney-client relationship was formed.[3] Plaintiffs have submitted the declarations of two of the

---

[3] This initial focus on whether confidential information has been disclosed is therefore somewhat anomalous. Nevertheless, the relationship between an attorney and a client must mature to a sufficiently serious stage before courts will intervene to protect a would-be client's trust in his or her attorney -- particularly with the harsh remedy of disqualification. The disclosure of

11

nine officers who met with Mr. Cassidy. Both officers declared that the discussion with Mr. Cassidy at the October 11, 2007 meeting "generally involved the operating procedures regarding strip-searches of inmates in the jails." Decl. of David Holsten ("Holsten Decl.") ¶ 6; Decl. of Thomas Schlemmer ("Schlemmer Decl.") ¶ 6. They also stated that Mr. Cassidy discussed the general aspects of a deposition. Holsten Decl. ¶ 7; Schlemmer Decl. ¶ 7. Neither officer, however, stated that they divulged confidential information. Mr. Cassidy has also affirmed that the officers did not disclose confidential information, and that he did not render any legal advice during the meeting. Cassidy Decl. ¶ 8.

Plaintiffs respond that the nine officers had a reasonable belief that Mr. Cassidy was their attorney, based on both his verbal promise to represent them as witnesses, as well as his subsequent letter terminating any attorney-client relationship with the officers. Carr Decl., Ex. C ("[W]e hereby withdraw our representation of you as a witness in the Todd case."). But the "reasonableness" of their beliefs ultimately turns on a question of law: when is an attorney-client relationship formed for conflict of interest purposes? Under SpeeDee Oil, the answer is whenever confidential information is disclosed. Here, the silence of the officer declarations on that issue is telling. While certainly not

---

confidential information may not be a perfect barometer of that maturation, but it is not an irrational line to draw. In any event, this court is bound to follow the California Supreme Court's holding in SpeeDee Oil.

12

1 dispositive, the short length of the meetings (approximately one
2 hour), combined with the fact that Mr. Cassidy did most of the
3 talking, also supports the inference that no confidential
4 information was disclosed.[4]

5     Moreover, the court's present finding dovetails with the
6 practical reality that any harm suffered by plaintiffs is likely
7 minimal. Even if the nine officers believed that Mr. Cassidy was
8 their attorney, Mr. Cassidy disabused them of this belief a week
9 later when he sent his letter. This absence of practical harm is
10 juxtaposed against the serious consequences that would flow from
11 disqualification, including financial burdens on the county and
12 interference with its choice of counsel.

13     Accordingly, the count finds that plaintiffs never formed an
14 attorney-client relationship with Mr. Cassidy for conflict of
15 interest purposes.

16 **C. Ex Parte Contacts**

17     Plaintiffs next argue that Mr. Cassidy violated the rule
18 against communicating with a represented party without the consent
19 of that party's lawyer. Cal. R. Prof. Conduct 2-100(A) ("While
20 representing a client, a member shall not communicate directly or
21 indirectly about the subject of the representation with a party the
22 member knows to be represented by another lawyer in the matter,

---

[4] Although plaintiffs argue that the exchange of confidential information may be presumed where the two actions are substantially related, <u>Civil Service Comm'n</u>, 163 Cal. App. 3d at 79, that is not the case here, <u>see</u> infra n.5, and this presumption applies in successive as opposed to concurrent adverse representation cases.

13

unless the member has the consent of the other lawyer.").

Here, both officers have stated that strip searches were performed "prior to and/or immediately after the end of the scheduled work shift without compensation" and that strip searches constitute part of their overtime claim in this action. Schlemmer Decl. ¶ 11; Holsten Decl. ¶ 11. Curiously, there is no allegation in the complaint that the plaintiffs conducted strip searches as part of their uncompensated overtime work.[5] See FAC ¶¶ 38-39 (discussing pre- and post-shift activities, such as obtaining assignment information, gathering paperwork, logging in/out of computers, returning keys, and briefings). Nevertheless, plaintiffs need not recite every single fact in support of their claims, see Fed. R. Civ. P. 8 (requiring only a "short and plain statement of the claim"), and the present complaint can be fairly read to encompass strip searches.

Mr. Cassidy's October 11, 2007 meeting therefore violated the rule against ex parte communication. But, given that his communication was obviously inadvertent, and that no confidential information was disclosed during this contact, the harsh penalty of disqualification would not be appropriate.

Generally, disqualification for ex parte communication is only appropriate where the misconduct will be certain to have

---

[5] Although the court need not resolve the issue of whether there was a substantial relationship between Mr. Cassidy's representation of the county in this action and his brief representation of the officers in Todd, the omission of any mention of strip searches in the complaint in this case would counsel against such a finding.

"continuing effect" on the judicial proceedings. See Marcum v. Channel Lumber Co., No. 94-2637, 1995 WL 225708, at *2 (N.D. Cal. Mar. 24, 1995); Chronometrics, Inc. v. Sysgen, Inc., 110 Cal. App. 3d 597, 607 (1980). Here, plaintiffs argue that they are prejudiced by virtue of the fact that Mr. Cassidy had the opportunity to examine the credibility of the nine officer plaintiffs. They contend that where an employer fails to record time and keep proper records, an employee's testimony is relevant to proving damages. See, e.g., Brock v. Seto, 790 F.2d 1446 (9th Cir. 1986). But this same credibility assessment can also be made during the course of depositions. See Marcum, 1995 WL 225708, at *2. ("Nothing was discussed which could not have been learned through [] depositions."). More fundamentally, it does not rise to the level prejudice warranting disqualification.

### III. Conclusion

For the reasons explained above, the motion to disqualify (Dock. No. 64) is DENIED.

IT IS SO ORDERED.

DATED: February 4, 2008.

_/s/ Lawrence K. Karlton_
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT